IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ANDREA WIMMER and AARON LANDHERR, ) ) Plaintiffs, ) ) vs. ) ) CITY OF ST. CHARLES, ) ) and, ) ) OFFICER JASON FRANKLIN, ) in his individual capacity ) )       Serve at: )       3254 Greenwich Ln. )       Saint Charles, MO 63301 ) ) and, ) ) OFFICER MICHAEL TIEMANN, ) in his individual capacity ) )       Serve at: )       131 Del Oro Dr. )       Saint Peters, MO 63376 ) ) and, ) ) JOHN DOES #1-3, ) in their individual capacities ) )       Defendants. ) | No.: _____ <br><br> JURY TRIAL DEMANDED |

## COMPLAINT

Comes now Plaintiffs Andrea Wimmer and Aaron Landherr ("Plaintiffs"), through counsel, and for their Complaint, states as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over Plaintiffs' claims arising under 42 U.S.C. §1983, pursuant to federal question jurisdiction, 42 U.S.C. §1331.

2. Venue in this District Court is appropriate pursuant to 28 U.S.C. §1391(b)(2), as "a substantial part of the events or omissions giving rise to the claim occurred" within this Court's geographic jurisdiction, i.e. St. Charles, Missouri, where at least one (1) defendant also resides.

## PARTIES

3. Prior to his death on September 16, 2020, decedent Joshua Landherr (hereinafter, "Decedent") was a U.S. citizen domiciled in the State of Missouri.

4. Plaintiff Andrea Wimmer is a U.S. citizen and domiciled in the State of Missouri.

5. Plaintiff Andrea Wimmer is the natural, biological mother of the decedent.

6. Plaintiff Aaron Landherr is a U.S. citizen and domiciled in the State of Missouri.

7. Plaintiff Aaron Landherr is the natural, biological son of the decedent.

8. Plaintiffs hereby make their jury demand.

9. All tier 1 descendants under the Missouri Wrongful Death statute (RSMo § 537.080), have been notified of this action.

10. Defendant City of St. Charles (hereinafter, "St. Charles") is a governmental subdivision of the State of Missouri.

11. At all relevant times, defendant St. Charles was acting under the color of law with respect to the acts and/or omissions alleged herein.

12. At all relevant times, St. Charles operated a municipal jail at 1771 Zumbehl Road referred to as the St. Charles Police Department Holdover (hereinafter, the "St. Charles Jail"), and provided the training for its guards/police officers, and the procedures and policies by which such officers conducted prison affairs.

13. On information and belief, at all relevant times Defendants Franklin ("Franklin") and Tiemann ("Tiemann" and with Franklin, the "Guards") are and were domiciled in the State of Missouri. On information and belief, John Does 1-3 (the "Intake Officers") were also domiciled in the State of Missouri.

14. At all relevant times, the Intake Officers and the Guards were St. Charles employees, assigned to the St. Charles Jail and responsible for prisoner oversight, monitoring, and care.

15. At all times relevant herein, the Intake Officers and the Guards were each acting under the color of law. They are each sued herein in their individual capacities.

## **FACTUAL ALLECTIONS - COMMON**

16. On September 15, 2020, at approximately 7:32p.m., Decedent was placed in a holding cell (hereinafter, the "Cell") at the St. Charles Jail with the prior and ongoing approval of the Intake Officers.

17. After his arrest and placement in the Cell, Decedent was unable to care for himself, and instead relied entirely upon the defendants to provide him with adequate care ("Minimum Care").

18. On information and belief, at all relevant times the Defendants believed Decedent was under the influence of a controlled substance and was acting violently and erratically as a result, but did nothing to determine the type or amount of such substance in Decedent's system.

3

19. At all relevant times, an intercom system was installed in the Cell, permitting communication between Decedent and guards at the St. Charles Jail.

20. At all relevant times, a security camera was installed in the Cell, allowing the guards at the St. Charles Jail to see and hear Decedent in real-time.

21. At all relevant times, such live footage and audio from within the cell (hereinafter, the "Live Feed") could be seen and heard by guards at the St. Charles Jail on a computer and/or intercom speaker system located at their desk.

22. The Live Feed showed Decedent acting erratically and violently within the Cell.

23. The Live Feed showed Decedent visibly upset, kicking and hitting the door, slamming his head against the door, and yelling.

24. On multiple occasions, Decedent attempted to use the intercom system to seek help from the guards at the St. Charles Jail.

25. No later than 1:16 a.m. on September 16, 2020, the Live Feed showed Decedent shaking and unsteady, sweating profusely, gasping, and eventually collapsing.

26. Despite the Live Feed showing Decedent suffering from a traumatic deterioration in his health, the Guards never left the front desk until approximately 1:57 a.m., when Defendant Franklin walked by the Cell.

27. Defendant Franklin saw Decedent lying near motionless on the floor, but ignored his condition, and returned to the front desk.

28. The Guards proceeded to do nothing to help Decedent, assess his condition, or contact anyone else to help him or assess his condition.

29. By 2:13 a.m., most of Decedent's movements had stopped.

30. At 2:18 a.m. Defendant Tiemann walked by the Cell wherein Decedent was lying near motionless on the floor.

31. Finally, at approximately 2:21 a.m. (after first calling their supervisor, Sergeant Yadlosky, DSN 279, to notify him that they had a problem to deal with), the Guards called EMS to help them conduct a medical check.

32. At approximately 2:24 a.m., the Guards finally opened the Cell to offer Decedent assistance.

33. At approximately 2:28 a.m., paramedics arrived and took over resuscitation efforts.

34. Decedent was taken to the hospital, where he died as a direct result of the delay in administering any, much less sufficient, aid to him.

35. The Defendants knew that Decedent was incarcerated under conditions that posed a substantial risk of harm and/or knew of his serious medical needs, but were deliberately indifferent thereto, failing to take reasonable measures to mitigate that risk or address those needs.

36. This delay and/or failure to mitigate this risk was not rationally related to a legitimate non-punitive governmental purpose (or, alternatively, was excessive in relation to any such purpose), and was a direct violation of Decedent's Constitutional rights, leading to his death.

37. As a direct result and proximate cause of these Constitutional violations, Decedent and Plaintiffs suffered damage, including but not limited to loss of life, earning capacity, pain and suffering and ongoing attorney fees and costs. Defendants are jointly and severally liable for such damages.

## COUNT I
## 42 U.S.C. §1983 – Deliberately Indifferent Intake/Confinement Policy
## (Against St. Charles)

38. Plaintiffs adopt and restate all preceding paragraphs and allegations as though fully set forth herein.

39. Decedent was incarcerated despite an obvious, serious medical condition requiring immediate medical care.

40. On information and belief the "Intake Officer(s)" approved Decedent's incarceration without performing or relying upon any, or any sufficient, medical review of his obvious risk of overdose.

41. On information and belief, a St. Charles policy, procedure, or custom (the "Custom") existed at all relevant times, whereby prisoners exhibiting signs of drug use and/or believed to be under the influence of opioids/narcotics or amphetamines, were placed in cells to "come down" and/or sleep it off rather than be assessed or treated for potential overdose by medical professionals, even after obvious symptoms of overdose become apparent, including but not limited to: repeated pleas for assistance, heavy sweating, shaky and/or unsteady gate, erratic and violent behavior, shallowing breathing or gasping, and collapse (the "Symptoms").

42. Alternatively, St. Charles chose not to establish an appropriate policy to have qualified medical professionals identify and address the immediate needs of inmates with serious medical conditions, and thereby created a risk of great bodily harm that was sufficiently obvious as to constitute deliberate indifference to inmates', and specifically Decedent's needs, i.e. his Minimum Care requirements, leading to the Intake Officer(s) improperly clearing Decedent as "fit for confinement" pursuant to St. Charles Jail policy 900.3.1.

43. On information and belief, St. Charles was informed by prior prisoner overdoses, that their intake policy was inadequate. St. Charles, however, refuses to track this information and as such has deliberately refused to address this obvious need.

44. St. Charles knew or should have known that the Custom or failure to establish a proper policy/procedure/custom despite the obvious risk of harm, created the situation wherein Decedent was incarcerated under conditions that posed a substantial risk of harm, but intentionally or recklessly failed to change this Custom or establish an appropriate policy to identify and address the immediate needs and Minimum Care requirements of inmates, or provide sufficient ongoing oversight of such conditions.

45. The Custom (or failure to establish a proper policy/procedure/custom despite the obvious risk) whereunder the Intake Officer(s) and/or the Guards intentionally ignored Decedent's obvious need for medical care, including the Symptoms, denied Decedent sufficient assessment of medical needs or medical assistance (initially and on an ongoing basis), and/or recklessly failed to provide care when they knew or should have known of the need to do so, was not rationally related to a legitimate non-punitive governmental purpose or was excessive in relation to any such purpose, directly violated or authorized the violation of Decedent's Fourth, Eighth, and Fourteenth Amendment rights to adequate care and due process, led to Decedent's death, and showed deliberate indifference to these rights and the Minimum Care Decedent was owed and required. A proper and adequate policy would have prevented these violations.

46. Moreover, these violations, and the Custom directing or authorizing same, were committed or made knowingly, intentionally, and maliciously.

47. As a direct result of these Constitutional violations, Decedent and Plaintiffs suffered damage, including but not limited to loss of life, earning capacity, pain and suffering and ongoing attorney fees and costs.

WHEREFORE, Plaintiffs seek judgments against defendant St. Charles for damages in an amount which will fairly compensate plaintiffs for actual damages, punitive damages, reasonable attorney fees and costs, and for such other relief which the Court deems just and fair.

## COUNT II
### 42 U.S.C. §1983 – Deliberately Indifferent Guard Training and Hiring Policy
### (Against St. Charles)

48. Plaintiffs adopt and restate paragraphs 1-37 as though fully set forth herein, and states the remainder of Count II in the alternative to Count I.

49. According to the Petitions (for re-instatement) filed by the Guards, they were "not instructed on what 'changes' [they] needed to observe before notifying the on-duty supervisor of a 'change' in [Decedent's] behavior or the time frame in which to contact the on-duty supervisor." St. Charles County Case No. 2111-CC00151 and 152, *Petition, at par. 10*.

50. Similarly, "[the Guards] had never received any medical or behavioral training from the Police Department which would have given [them] an objective standard for when [they] should report any observed change in [Decedent's] behavior. *Id, at par. 11*.

51. "[The Guards] had not received any medical training and [were] not trained in how to use any emergency medical equipment...." *Id, at par. 16*.

52. In response to each of these allegations, St. Charles claimed they had/have insufficient information (regarding both the instructions and the training the Guards received) to form a response.

8

53. The need to train or instruct its guards (or hire medical professionals to assist them) to identify prisoners at risk of an overdose, to monitor such prisoners for drug use in cells, and to identify prisoners experiencing an overdose and in need of emergency care, is obvious, i.e. such training is necessary to prevent death and violations of the Constitutional rights of St. Charles prisoners, including Decedent.

54. Similarly, the need to train or instruct guard supervisors and/or employees handing inmate intake (or hire medical professionals to assist them) to identify prisoner risk of an overdose and require competent medical care or observation was also obvious and necessary to prevent such violations.

55. Additionally, on information and belief, St. Charles was informed by prior prisoner overdoses, that the training provided to the Guards in identifying prisoners at risk of an overdose, monitoring drug use in cells, and/or in identifying prisoners experiencing an overdose and in need of emergency care, was inadequate. St. Charles, however, refuses to track this information and as such has deliberately refused to address this obvious need.

56. As such, St. Charles knew or should have known that its guards, and the Intake Officer(s) and Guards specifically, would confront a situation such as Decedent's, a situation that either its employees had mishandled in the past or would likely mishandle without proper training, and which when mishandled would violate Decedent's aforementioned Constitutional rights.

57. Proper training or hiring would have led to Decedent being identified as at risk of an overdose, would have required immediate medical attention or adequate monitoring that would have prevented treatment delay, would have identified the Symptoms as that of an overdose requiring immediate medical assessment and treatment, and/or prevented drug use in the Cell, if any.

9

58. St. Charles' training and/or hiring program for prisoner care was a city policy, procedure and/or custom. Such policy was inadequate, and amounted to deliberate indifference to Decedent's obvious medical needs, where guard and/or officer inaction (including Guards' and/or Intake Officer(s)' inaction specifically) would obviously result in the violation of Decedent's rights under the Fourth, Eighth, and Fourteenth Amendments.

59. A proper training/hiring policy would have prevented the violations, such that St. Charles' failure to train its employees (including Intake Officer(s) and/or the Guards specifically), or hire medical staff to assist them, did in fact violate such rights, was the moving force behind such violations, and directly and proximately caused Decedent's death.

60. As a direct result and proximate cause of these Constitutional violations, Decedent and Plaintiffs suffered damage, including but not limited to loss of life, earning capacity, pain and suffering and ongoing attorney fees and costs.

WHEREFORE, Plaintiffs seek judgments against defendant St. Charles for damages in an amount which will fairly compensate plaintiffs for actual damages, punitive damages, reasonable attorney fees and costs, and for such other relief which the Court deems just and fair.

### COUNT III
### 42 U.S.C. §1983 – Deliberate Indifference to Medical Needs
### (Against Franklin)

61. Plaintiffs adopt and restate par. 1-37 of this Petition, as though fully set forth herein.

62. Decedent's Fourth, Eighth, and Fourteenth Amendment rights to immediate care, emergency care, and due process prior to his death are so clearly established that a reasonable officer would have known that ignoring his pleas and obvious deterioration was a violation of such rights.

63. Franklin watched the Live Feed and heard Decedent's pleas.

64. Franklin knew or should have known that Decedent was incarcerated under conditions that posed a substantial risk of harm, but intentionally or recklessly failed to act with reasonable care to mitigate that risk, by offering or obtaining immediate or emergency care despite Decedent's obvious need therefor.

65. This delay and/or failure to mitigate risk was not rationally related to a legitimate non-punitive governmental purpose or was excessive in relation to any such purpose, and was a direct violation of Decedent's Constitutional rights, and led directly to his death.

66. This delay and/or failure was obviously and objectively unreasonable and showed deliberate indifference to such rights and the obvious and serious medical needs of the Decedent.

67. As a direct result and proximate cause of these Constitutional violations, Decedent and Plaintiffs suffered damage, including but not limited to loss of life, earning capacity, pain and suffering and ongoing attorney fees and costs.

WHEREFORE, Plaintiffs seek judgments against Franklin for damages in an amount which will fairly compensate plaintiffs for actual damages, punitive damages, reasonable attorney fees and costs, and for such other relief which the Court deems just and fair.

### COUNT IV
### 42 U.S.C. §1983 – Deliberate Indifference to Medical Needs
### (Against Tiemann)

68. Plaintiffs adopt and restate par. 1-37 of this Petition, as though fully set forth herein.

69. Decedent's Fourth, Eighth, and Fourteenth Amendment rights to immediate care, emergency care, and due process prior to his death are so clearly established that a reasonable officer would have known that ignoring his pleas and obvious deterioration was a violation of such rights.

70. Tiemann watched the Live Feed and heard Decedent's pleas.

11

71. Tiemann knew or should have known that Decedent was incarcerated under conditions that posed a substantial risk of harm, but intentionally or recklessly failed to act with reasonable care to mitigate that risk, by offering or obtaining immediate or emergency care despite Decedent's obvious need therefor.

72. This delay and/or failure to mitigate risk was not rationally related to a legitimate non-punitive governmental purpose or was excessive in relation to any such purpose, and was a direct violation of Decedent's Constitutional rights, and led directly to his death.

73. This delay and/or failure was obviously and objectively unreasonable and showed deliberate indifference to such rights and the obvious and serious medical needs of the Decedent.

74. As a direct result and proximate cause of these Constitutional violations, Decedent and Plaintiffs suffered damage, including but not limited to loss of life, earning capacity, pain and suffering and ongoing attorney fees and costs.

WHEREFORE, Plaintiffs seek judgments against Tiemann for damages in an amount which will fairly compensate plaintiffs for actual damages, punitive damages, reasonable attorney fees and costs, and for such other relief which the Court deems just and fair.

### COUNT V
### 42 U.S.C. §1983 – Deliberate Indifference to Medical Needs
### (Against Intake Officer(s))

75. Plaintiffs adopt and restate par. 1-37 of this Petition, as though fully set forth herein.

76. Decedent's Fourth, Eighth, and Fourteenth Amendment rights to immediate care, emergency care, and due process prior to his incarceration are so clearly established that a reasonable officer would have known that failing to properly evaluate a detainee for potential overdose was a violation of such rights.

77. The Intake Officer(s) knew or should have known that Decedent would be incarcerated under conditions that posed a substantial risk of harm, but intentionally or recklessly failed to act with reasonable care to mitigate that risk, by evaluating, offering, or ordering immediate or emergency care despite Decedent's obvious need therefor, and by entrusting his care to untrained Guards.

78. These failures were not rationally related to a legitimate non-punitive governmental purpose or were excessive in relation to any such purpose, and were a direct violation of Decedent's Constitutional rights leading directly to his death.

79. These failures were obviously and objectively unreasonable and showed deliberate indifference to such rights and the obvious and serious medical needs of the Decedent.

80. As a direct result and proximate cause of these Constitutional violations, Decedent and Plaintiffs suffered damage, including but not limited to loss of life, earning capacity, pain and suffering and ongoing attorney fees and costs.

WHEREFORE, Plaintiffs seek judgments against the Intake Officer(s) for damages in an amount which will fairly compensate plaintiffs for actual damages, punitive damages, reasonable attorney fees and costs, and for such other relief which the Court deems just and fair.

### COUNT VI
### State Wrongful Death (RSMo § 537.080)
### (Against All Defendants)

81. Plaintiffs adopt and restate par. 1-37 of this Petition, as though fully set forth herein.

82. At all relevant times herein the Intake Officer(s) and the Guards acted within the course and scope of their employment and to further the objectives of their employer, St. Charles.

83. St. Charles has waived its sovereign immunity for negligent acts and omissions resulting in personal injuries and tort liability while conducting governmental functions to the extent it is covered by purchasing liability insurance.

84. Upon information and belief, the nature and extent of the conduct, injuries and damages set forth above specifically fall within the gambit of the type of negligent acts and omissions covered by the purchase of the tort liability insurance for Defendant St. Charles and its employees, including respondeat superior liability, thereby waiving sovereign immunity. On information and belief, the liability insurance purchased for tort liability and personal injuries insuring itself and its employees specifically covers all of the claims Plaintiffs make herein.

85. The foregoing actions of the Intake Officer(s) and the Guards constituted conscious wrongdoing and/or the failure to perform a ministerial act, such that official immunity does not apply.

86. The foregoing actions of Defendants were taken with conscious disregard for the rights of Decedent and others, such that Plaintiffs are entitled to an additional award of punitive damages.

87. Defendants are jointly and severally liable for all such damages.

WHEREFORE, Plaintiffs seek judgments against each Defendant, jointly and severally, for damages in an amount which will fairly compensate plaintiffs for actual damages, punitive damages, reasonable attorney fees and costs, and for such other relief which the Court deems just and fair.

Respectfully submitted,

THE SCHINDLER LAW FIRM, P.C.

   /s/ Joshua M. Schindler
Joshua M. Schindler, #37891(MO)
Brian P. Doty, #61391(MO)
141 N. Meramec Avenue, Suite 201
(314) 862-1411; (314) 862-1701 (Fax)
josh@schindlerlawfirm.com

*Attorneys for Plaintiffs*